### IN

# THE SUPREME COURT

### OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1890.

## PHILIP KELLER v. MARY P. OVER ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF CENTRE COUNTY.

Argued April 25, 1889—Decided June 4, 1890.
[To be reported.]

1. Where both parties in ejectment claim by lines and corners marked on
the ground, the rule that an official survey duly made and returned, and
unquestioned for more than twenty-one years, is conclusively presumed
to have been actually made upon the ground as returned, is inapplica-
ble.
2. Such presumption, being raised only to supply the place of actual
proofs, has no application to a case in which the existence of marks
upon the ground, establishing where the official survey was actually
made, is shown; in which case, the proper location of the tract is to be
determined by the jury from such marks: Grier v. Penna. Coal Co., 128
Pa. 79.
3. Where there are no marks upon the ground exhibiting the actual loca-
tion of one of the lines of an official survey duly returned, that line may
be fixed by protraction from any known monument on any other known
line, by means of the legal presumption that the lines were run upon
the ground as returned.
4. And when different marked lines are found on the ground, the fact
that the official return of survey corresponds with a marked line con-
tended for by one of the parties, is a circumstance proper for the con-

sideration of the jury in determining which of the lines is the true location.

5. But, upon the trial of such case, a charge which, while conceding that the marks upon the ground must control in deciding the question of location, directs the jury to apply, in their consideration of the evidence, the presumption that the official survey, being more than twenty-one years old, was made as returned, is misleading.

Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 399 January Term 1889, Sup. Ct.; court below, No. 121 November Term 1883, C. P.

On October 18, 1883, Philip Keller brought ejectment against George W. Ford and James A. Beaver for a tract of land containing 300 acres and six per cent allowance, etc. The defendant's plea was not guilty. On February 1, 1886, the death of George W. Ford being suggested, Mary P. Over and others, his heirs at law, were substituted as defendants.

At the trial on December 7, 1887, the following facts were shown :

The land claimed by the plaintiff was embraced in an official survey, made August 5, 1874, in pursuance of a warrant dated June 3, 1869, granted to Joseph Devling. By a regular chain of title the claim of Joseph Devling, under said warrant and survey, was vested in the plaintiff. The heirs of George W. Ford showed title in themselves to a tract originally surveyed under a warrant dated April 29, 1793, in the name of Thomas Greeves ; and James A. Beaver showed title to a tract surveyed under a warrant of the same date, in the name of Samuel M. Fox. Ford's heirs were in possession of a part of the land sued for in this action, claiming that the same was embraced within the Greeves survey, and Beaver was in possession of the remainder of it, and claimed the same as a part of the Fox survey. The only controversy in the case was over the proper location of the Greeves and Fox surveys. If that location was as the plaintiff claimed it to be, his title was good; but if the proper location was as claimed by the defendants, they had the older and superior title to the land in dispute.

The Greeves and Fox surveys were part of a block of surveys known as the Moore Wharton block. That block was

located and surveyed, under the warrants which covered it, in August, 1794. The testimony for the defendants tended to show that the western boundary line of the Moore Wharton block, as run and marked upon the ground by the official surveyor, coincided with the eastern line of another block, known as the Slaymaker block; while the testimony for the plaintiff tended to show that the western boundary of the Moore Wharton block was located and marked upon the ground by the surveyor some distance to the east of the Slaymaker block, leaving, between the two, the strip of land afterwards covered by the Devling survey.

At the close of the testimony the court, SIMONTON, P. J., 12th district, specially presiding, charged the jury in part as follows:

The matter in controversy is whether the land surveyed on the Joseph Devling warrant is the same land which was covered by the Thomas Greeves and Samuel M. Fox surveys.

The title held by the defendants is the older title; therefore, if the land claimed by the plaintiff was covered by surveys and patents issued at an earlier date, which the defendants now own, then your verdict would have to be for the defendants; whereas, if the surveys made upon defendants' warrants do not cover the land where the plaintiff's survey was located, then your verdict would be for the plaintiff.

You understand then, gentlemen of the jury, it is a question of location and not a question of paper title; a question of location; and that question you have to determine. It is a question of fact for the jury; it is your duty, therefore, to determine it, not the duty of the court. Our duty is to instruct you on the principles of the law which must guide you in determining that question. . . . .

In 1794, at the time the warrants were granted under which the defendants in this case claim, the law was that no person should take a warrant for more than 400 acres, on which, however, they were allowed to have surveyed and returned a small amount in excess over that number of acres. But it became a settled practice for persons wishing to appropriate more land than that, to make a number of applications at the same time for warrants in the names of different persons, either actual

Charge of Court below.

persons, who allowed their names to be used for the purpose, or fictitious persons; and this practice was winked at by the land authorities, who knew the fact that the warrants were really taken in the various names by a single person or company of persons, whose title was fixed by accepting payments of the purchase money from them. When a number of warrants were thus taken out, and surveys were made upon them, they were considered, in fact and reality, as a single survey, and they have been called ever since a block or batch of surveys; and the rule was adopted and settled that they should be surveyed as a single tract. It was equivalent, in fact, to a person taking out a warrant and having a survey made for a large tract containing the number of acres which all the surveys amounted to when added together.

Counsel have asked us to give you certain instructions as to the rules and principles according to which batches or blocks of warrants were to be surveyed, and according to which the location is to be located and determined. We will give you these instructions at this point.

The plaintiff has asked us to say to you:

1. That the lines run and marked upon the ground by the deputy surveyor and returned by him, constitute the actual survey; and, when they can be found and identified, they are the highest and best evidence of where the survey is located."

Answer: This is affirmed.

2. The calls for natural and visible monuments, such as streams, waters, etc., are the next best evidence of the location of a tract or block of surveys, when its own lines cannot be found.

Answer: This point is affirmed with this one qualification, that this is so where the jury find that the streams, waters, etc., are laid down from actual survey and actual observation of the surveyor. We insert this qualification, in answering the above point, because of a fact well known, a fact referred to here by counsel on both sides, that surveyors did not run all the lines of their surveys. It is well known that they frequently marked waters upon surveys, when they had not actually run the lines; and of course where they did that, not as much confidence would be put in the accuracy of their marking of the waters; and where it appears to the jury, in any given case, that the waters were marked without an actual survey having been made, of

course it would have very little weight, but the situation of the waters, when they were laid down by the surveyor, having been actually upon the ground, is of weight as stated in this point.

4. That in the absence of lines run and marked, or adopted, for the tract or block, and in the absence of natural visible monuments called for, calls for adjoining surveys are the next best evidence of the location of the tract.

Answer: This is affirmed.

5. Courses and distances are the weakest evidence of the location of a tract or block of surveys, and can only be resorted to when all superior evidence fails.

Answer: This is also affirmed.

6. When lands are surveyed and returned into the land office in blocks, they are to be located in blocks.

Answer: This is affirmed.

7. The location of one or two particular tracts of a block cannot be arbitrarily determined, but it is to be got at by first locating the block of which they are parts.

Answer: This is also affirmed.

8. The lines and corners of each tract of a block of surveys belong to every other tract of the block, and assist in locating every tract.

Answer: Affirmed.

The defendants have asked us to say virtually the same:

1. That in locating a block of surveys, all the lines and corners marked upon the ground must be taken into account; those found upon any part of the block belong to each and every tract of which it is composed, and if sufficient, determine the location of the entire block.

Answer: This is affirmed.

2. A block of surveys must be so located as to preserve as far as possible the entire conformation of the block as officially returned.

Answer: This is affirmed. It is a matter to be looked to; it does not control absolutely, but where they can be so located, and between such a location and another that would distort the general conformation of the block, the location that would preserve its contour would have the preference.

[There are two other rules with respect to which instructions have not been asked for by either side, but they are rules to be

observed by the jury in considering the question of location, and these are: That where surveys have been made and returned into the land office for a period greater than twenty-one years, without having ever been questioned or controverted, the presumption is conclusive that the surveyor actually made the survey upon the ground. It is also a rule that where surveys have been made and returned for over twenty-one years, without dispute, the presumption is that they were actually made as they were returned, or located; where they are returned as having been located; and, after the lapse of so long a period, as in this case, if you find that these surveys returned in 1794 were not questioned until 1869, after the lapse of so long a period as that the presumption would be very strong that originally the surveys were made as they were returned as having been made and located. The reason of this is, that after so long a period of time the marks made by the surveyor disappear, the witnesses die, trees die, are burned or cut down, and posts decay. The greater the lapse of time, the more difficult it is to follow the work of the surveyor on the ground; and hence it is necessary to pay great regard to the report the surveyor made of his work, that is, to his official return of survey. It is a fair presumption that his return is correct and truthful.] [1]

[Bearing in mind, gentlemen of the jury, these rules as we have stated them, you must endeavor to ascertain in the first place where the official returns say that the surveyor located these thirty surveys of the Moore Wharton block.] [2]  For you understand there is no dispute as to the location of the Devling survey, there is no doubt as to where that was located; that is not the question; the question is, were the Samuel M. Fox and Thomas Greeves located where the Devling is located. In order to ascertain this you must look for the location of the Moore Wharton block, of which the Fox and the Greeves form a part.

[We say to you, in the first place, it is proper for you to look and see where the surveyor in 1794 returns he had located them. (The court here recited the locations of the surveys of the Moore Wharton block, on its west line, from the official return.) That is the way in which the deputy surveyor returns that he located these tracts. As we have said, after so long a lapse of time the presumption would be that this is the way he

Charge of Court below.

did locate them. After the lapse of so many years, sixty or seventy the courts say, there would be a presumption, a strong presumption, a strong probability that he did locate them in that way.] [3] But this would be a probability which would be overcome by evidence of the work on the ground, if his work on the ground was different. Then, if you ascertain that work and are satisfied of the correctness of your finding of that work, that would control.

[The defendants then start out with this presumptive location by the deputy surveyor. You have heard the evidence they have produced to sustain their claim that this location is substantiated by the work upon the ground.] [4] [They have shown you a connected draft of the Slaymaker block, lying directly west, as they claim, of the Moore Wharton block; they have shown that according to this draft before you, there are these jogs in the surveys, just as they are called for here, and that one would fit the other. They have given evidence tending to show that the calls for the corners on the western line of these Moore Wharton tracts are the same as the calls on the corresponding eastern tracts in the Slaymaker block, and you have heard also the evidence of the surveyors as to the running of the line, which is, I believe, admitted on both sides to be the eastern line of the Slaymaker block. The defendants claim that this is also a line of the Moore Wharton block, and that the two blocks come together. You have learned, also, from the testimony, that the Slaymaker surveys call for the Moore Wharton surveys, while the Moore Wharton surveys on that side call for vacant land. And, I believe, it has been shown that the Moore Wharton tracts are the younger, so that you have the older surveys calling for the younger, while the younger call for vacant land on the side where the older are located. The difference in the date is not very great, not more than something like a week between the time that some of these tracts are returned as being located on the one side and on the other. The defendants claim that the surveys were all in the hands of one surveyor at the same time, and that the reason of the call for the vacant land by the surveys of the Moore Wharton block, may be that they were surveyed first, while in reality the Slaymaker were first returned. You will consider that and give it what weight it is entitled to. If that was the case it might explain the fact of the Moore Wharton

Charge of Court below.

tracts calling for vacant land without forcing you to the conclusion that there was a vacancy between the two blocks.] [5]

You understand that the plaintiff claims that this call is correct, that there is a vacancy; that while, when the Slaymaker. warrants were located, the surveyor may have intended to join the Moore Wharton surveys to the Slaymaker, yet, plaintiff claims he did not do so in fact, and therefore called for vacant land there. [It is very probable that the call for that vacant land originated all this controversy. It is very probable that if there had been no call there for vacant land, the idea would not have arisen that the vacancy existed;] [6] but the call is there; it is one of the facts of the case, and must be considered, together with all the other evidence in the case, in determining what is the true location. . . . .

PLAINTIFF'S MAP.*

---

* And see, also, Holt's App., 98 Pa. 26.

Charge of Court below.

The plaintiff has shown his claim by the map, which he exhibits and which you now see before you. You see according to his claim of location there would be a vacancy where the Joseph Devling tract is located on his map. He says that this vacancy is shown by the work upon the ground, and his map exhibits what he claims to be that work. . . . .

We have not called your attention to all of the evidence on either side. You have heard it all and it has been discussed at length by the counsel in your hearing. [We leave it to you to remember what the evidence is, and to apply it to the case according to the principles we have laid down, remembering that the strongest evidence is the work on the ground; remembering, also, that after so great a lapse of time it may be difficult to find the work upon the ground, and that because of this, greater weight with the lapse of time is to be given to the returns made by the surveyor, and if the location indicated by these returns is different from and discredited by the work upon the ground, you would take that as being correct. But if you do find that the work upon the ground does not agree with the returns, then you take the work upon the ground, because that is the survey itself, if you can find what the surveyor did, that is, the surveys; and what he did at that time, in 1794, must remain and stand as the fact of the case.] [8]

[If the theory of the plaintiff as laid down on that map is correct, then, as you have heard and see, the surveyor must have laid down three tracts where there was no room for them at all, the Thomas P. Wharton, David Lewis and Richard Waln. The corners of these tracts are designated by posts. It is well known that where surveyors did not actually do their work upon the ground, they did not mark the corners, but referred to them as posts even if the work was in the woods. If the surveyor did not plot or lay these surveys down as you see them represented on paper, while the ground was already occupied by surveys laid down north and south of them; if he plotted them on paper where there was no room for them, they must of course give way. But you must consider carefully whether he made such mistake. After this lapse of time, in the face of these returns, you are to consider carefully whether he did make an error in his work in that way. You are not to fail to give weight to it if the work was actually done in

Arguments.

that way, but we caution you not to come to a hasty conclusion as to whether the work was so done.] [9] . . . . .

The verdict of the jury was in favor of the defendants. Motions in arrest of judgment and for a new trial having been refused, judgment was entered on the verdict, when the plaintiff took this appeal, assigning for error:

1–9. The parts of the charge embraced in [ ] [1 to 9]

*Mr. J. H. Orvis* (with him *Mr. W. C. Kress, Mr. C. M. Bower and Mr. E. L. Orvis*), for the appellant:

1. We do not allege that all the parts of the charge assigned for error are misstatements of the law, but we contend that the tendency of the charge as a whole, was misleading, and that its natural and inevitable result was to carry the minds of the jury to a wrong conclusion. The first of the rules which the court, after answering the points of the parties, voluntarily laid down, is a correct statement of that declared in Ormsby v. Ihmsen, 34 Pa. 462 ; but there was no room for the application of it in this case, as neither party contended that the survey of the Moore Wharton block was a chamber survey and never actually made on the ground. Both parties contended for an actual location by lines and corners, and the court might just as well have quoted to the jury any other rule or maxim of law or equity.

2. It was not claimed by either party, however, that each line of every tract in the block had been actually run. This was seldom if ever done in the location of such blocks, and the fact that certain interior lines were not so run, would not have prevented the survey from being an actual and a valid one, even before the adoption of the rule in Ormsby v. Ihmsen. If, however, the court below meant that there was a conclusive presumption of the actual running and marking of each line of every tract in the block, this would be carrying that rule further than any decision of this court authorizes. The second rule laid down by the court is neither a clear nor an accurate statement of the rule applicable to the location of surveys. While a presumption exists that the lines, the corners, the distances and the quantity of land are as the return of the deputy surveyor shows them to be, this presumption is not strong and may be

rebutted by proof that the lines run and marked by him differ, in both courses and distances, from those returned to the land office.

.3. This court has always recognized the following rules: (*a*) The lines run and marked upon the ground constitute the actual survey, and when they can be found and identified establish the survey against all other kinds of evidence. (*b*) Calls for natural monuments are the second best evidence of the location of surveys, and must prevail in the absence of lines actually marked on the ground. (*c*) Calls for adjoining surveys are the third best evidence of the location of a survey, or block of surveys, and, in the absence of lines marked and natural monuments, furnish the next best evidence of location. (*d*) The courses and distances returned are the lowest and weakest evidence of the location, and are only to be resorted to in the absence of all other means of ascertaining it: Wharton v. Garvin, 34 Pa. 340; Malone v. Sallada, 48 Pa. 419; Darrah v. Bryant, 56 Pa. 69; Pruner v. Brisbin, 98 Pa. 202. These rules are as applicable to old surveys, as to young ones.

4. Want of distance on the ground for all the tracts returned in a block, is not so uncommon a thing as to be an argument against the validity of lines and corners actually found on the ground for the block. This identical thing is found in Sugar V. Lumbering Co. v. Barber, 87 Pa. 313. The natural effect of the strong caution given to the jury, not to convict the deputy surveyor of such an error, was to cause them to disregard the actual lines run and marked upon the ground, because they would not leave room for all the tracts returned, thus again making the return higher evidence than the work done on the ground. This court took a very different view of this point, in connection with the location of this same block of surveys, in Holt's App., 98 Pa. 257.

5. After stating correctly the rules of law applicable to the questions of location, in answer to the points presented, the court proceeded in effect to destroy those rules and establish a contrary one, viz., that the return of survey, when it is very old, is to govern in all disputed questions of location, and that the jury must look with suspicion on all lines and marks upon the ground which differ in any degree from those returned. This idea permeates the whole latter part of the charge, and

destroys the effect of what the court had previously stated correctly. The natural tendency of the charge to impress upon the minds of the jury an erroneous rule for their guidance, is sufficient ground for reversal, even if no specific error could be pointed out: Bisbing v. Bank, 93 Pa. 79 ; Fawcett v. Fawcett, 95 Pa. 376 ; Coxe v. Deringer, 82 Pa. 236 ; Linn v. Commonwealth, 96 Pa. 285.

*Mr. John G. Love* (with him *Mr. J. W. Gephart*), for the appellees :

After twenty-one years from the return of a survey into the land office, there is a conclusive presumption of law that it was regularly made upon the ground as returned : Collins v. Barclay, 7 Pa. 67 ; Bellas v. Cleaver, 40 Pa. 260 ; Packer v. Mining & M. Co., 97 Pa. 379 ; Salmon Cr. L. & M. Co. v. Dusenbury, 110 Pa. 446 ; Lambourn v. Hartswick, 13 S. & R. 113 ; Norris v. Hamilton, 7 W. 91 ; Fugate v. Coxe, 4 S. & R. 293. In charging the jury, the court did not lay down the rule of presumption as strongly as the cases cited. And the jury were not instructed that this rule was conclusive of the location in this case, nor even that the burden was on the plaintiff to show that the survey was not located as returned, but they were told that the work on the ground would overcome the presumption and control the location. Taken in their connection, the portions of the charge complained of were neither erroneous nor misleading. Full weight and prominence were given to the work found on the ground and the streams and natural monuments mentioned by the witnesses.

OPINION, MR. JUSTICE McCOLLUM :

When the evidence in this case was closed, the plaintiff's right to recover depended on whether the land called for by his survey had been previously appropriated by the warrants under. which the defendants claimed. His survey lay between two lines of the proper age for the defendants' surveys. If the eastern line was the defendants' west line, the plaintiff was entitled to a verdict. If the defendants were right in holding to the western line, then the plaintiff had no land and no right to recover. This was a question of fact for the jury, to be determined on a consideration of all the evidence. The counsel

Opinion of the Court.

representing the parties to the issue submitted written points, which embodied all the law on the subject of location applicable to the case. The learned judge correctly answered these points, but in his general charge went beyond them, and introduced an element to which we are indebted for the presence of the case in this court. He told the jury, in substance, that there were two other rules to be observed by them in considering the question of location, and with respect to which neither party had asked instructions: First, that there was a conclusive presumption that a survey duly returned, and not questioned for more than twenty-one years, was actually made by the surveyor upon the ground; and, second, that after the lapse of twenty-one years there was a presumption that a survey so returned was actually made as returned or located, and that the latter increased in strength and weight as the years pass by. It is sufficient to say of the first that it had no application to this case, because both parties claimed by lines and corners marked upon the ground. As to the second, if there had been no marks on the ground on the west side of the defendants' surveys, their west line could have been fixed by protraction from any known monument on any other line, by means of the legal presumption that the lines had been run as they were returned.

But there were marks on the ground on the west side of the defendants' surveys. In the presence of the marks on the ground, the line was to be located by the jury from them, and the doctrine of the legal presumption that the lines were run as returned had no place in the case. Presumptions are raised to supply the place of actual proofs; when the proofs are present, there is neither foundation nor room for the presumption: Grier v. Penna. Coal Co., 128 Pa. 79. The official return of the survey was evidence in the cause, and its correspondence with the marked line to which the defendants claimed on the west was a circumstance to be considered by the jury, and to which it was proper for the court to direct their attention.

Aside from the introduction of the presumptions mentioned, and the use that was made of them in the charge, this case was well tried. But when the learned judge, whilst conceding that the marks upon the ground should govern in deciding the question of location, applied to it the presumption that the survey was made as returned, he did that which might, and naturally

would, mislead a jury.  In various forms in the general charge, and with marked emphasis, he kept prominently before them the presumption he had voluntarily invoked, to aid them in solving the problem of location; and he dwelt on the age of the surveys as lending strength to the presumption, and increasing the probability, that the official return was correct.  The natural tendency of this was to draw their attention from the work on the ground to the official return, from the best to the weakest evidence, and to subordinate the former to the latter.  As we think the charge was misleading in this respect, we are constrained to reverse the judgment.

> Judgment reversed, and venire facias de novo awarded.