# Mengell's Executors *v.* Mohnsville Water Company, Appellant.

*Water companies—Corporations—Eminent domain—Mill—Waters—Witnesses—Experts—Evidence.*

1. In a proceeding against a water company to assess damages for injuries to a mill property, witnesses for the plaintiff may express an opinion as to values, when they state that they are millers or manufacturers, that they are familiar with the property in question and in a general way with the market values in the neighborhood, and that there has been a diminution of water affecting the operation of the plant.

*Eminent domain—Condemnation proceedings—Damages—Interest.*

2. Interest, as such, cannot be allowed on damages in condemnation

proceedings. The court may, however, instruct the jury, that in ascertaining the amount of their verdict they may consider the lapse of time between the taking of the property and the time of trial as an element of damages, or as compensation for the delay in payment of the sum due the plaintiff for the injuries he has sustained. If such instructions have been given, and the jury fully understands that it is wholly for them to say whether the plaintiff is entitled to any additional sum for the delay, and if so for what amount, the appellate court will not reverse the judgment because the trial judge may have used the word "interest" in connection with the amount of the damages.

3. In actions ex contractu, the plaintiff is entitled as of right to interest on any fixed sum that may be found due him; and the jury, unless clearly and positively instructed, may infer in actions of tort that he is also entitled to interest on the damages awarded him. If he has not caused the delay in the ascertainment and payment of the damages, the delay is an element which should be considered by the jury in ascertaining the amount of their verdict; but where his action has unreasonably prevented a settlement for the amount due him and the defendant company has not been at fault he should not be compensated for his own wrong. In all cases of this character, therefore, the jury should receive explicit instructions by the court as to their duty in disposing of the question.

*Eminent domain—Parties—Executors and administrators—"Estate."*
4. In a proceeding to assess damages for property injured by a public service company where the estate of a testator is entitled to the amount of the damages, the proceedings should be instituted in the names of the executors, and not in the name of the estate of the deceased named.

Argued March 1, 1909. Appeal, No. 320, Jan. T., 1908, by defendant, from judgment of C. P. Berks Co., March T., 1906, No. 37, on verdict for plaintiff in case of estate of Matthias Mengel, deceased, v. Mohnsville Water Company. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Appeal from report of jury of view. Before ERMENTROUT, P. J.

At the trial the court permitted under objection and exception various witnesses for plaintiff to testify as to value. [1–4]

The court charged in part as follows:
I want to say further that the jury are not to consider as

any evidence of the market value of the property, the price paid for the property in 1875 as the market value in 1902. Common experience of the world teaches us that the values of property change greatly. What a person would give for a property in 1875 may be totally different from what they would give in 1902. [The point the jury is to ascertain is the difference in the market value in 1902 when the water was appropriated. That is the period, not 1875 or 1870 or to-day, but in 1902 when the property was taken, immediately before and immediately after the valuations are to be made, and the difference is the proper measure of damages in this case, with interest.] [5]

Verdict and judgment for plaintiff for $4,810.

On a rule for a new trial ENDLICH, P. J., filed the following opinion:

This is an issue in a proceeding instituted by the defendant company to assess the damages sustained by plaintiff by reason of the defendant's appropriation about 1902 of "part of the water of Kleinginna Creek," a tributary of Wyomissing Creek, the latter furnishing the power for plaintiff's mill, connected with which there is farming land and buildings. The issue was tried before the late President Judge ERMENTROUT.

Certain reasons assigned in support of the defendant's application for a new trial based upon the alleged action of the jury and of plaintiffs' counsel in its presence during a view of the property, are not pressed. Obviously these were matters which, if deemed of sufficient importance, would have been at once brought to the notice of the court as ground for the withdrawal of a juror and continuance of the cause, or at least for such instructions by the court as might appear adequate to neutralize their possible undue effect. Upon very familiar principles the failure to take advantage of them in limine constituted a waiver of any objection based upon them. Accordingly the only reasons relied upon are those which allege error in the admission of the testimony of a number of witnesses upon the question of market values over objections

made by defendant on the ground that they were not qualified for that purpose. The allegation of error in this particular is based upon what is said concerning the qualifications of witnesses as to market values in Lee v. Water Co., 176 Pa. 223; Lewis v. Water Co., 176 Pa. 230; Friday v. Railroad Co., 204 Pa. 405. It is not to be understood, neither is it contended, that these decisions announce any new doctrine upon the subject. On the contrary, the one last mentioned expressly proceeds upon the rules laid down in Pittsburg, etc., Ry. Co. v. Vance, 115 Pa. 325, and Michael v. Pipe Line Co., 159 Pa. 99. Hence, subject to the requirement that the qualifications of a witness to give an opinion must appear and be passed upon by the court before he is permitted to do so, Michael v. Pipe Line Co., 159 Pa. p. 104, the rule still obtains that, if upon his preliminary examination he is shown to have any pretensions to speak on the matter, his competency to do so rests much in the discretion of the trial judge, Oil Co. v. Gilson, 63 Pa. 146, the value and weight of the opinion expressed being, of course, a matter entirely for the jury: Pittsburg, etc., Ry. Co. v. Vance, 115 Pa. 325; Lewis v. Water Co., 176 Pa. 230. The question whether or not there was in this case such error as calls for the setting aside of this verdict in allowing the witnesses referred to to express their opinions is to be judged of in the light of these principles.

Levi W. Mengel, now a teacher of natural history, has known mill property since his childhood, being the son of its deceased owner. At one time he operated the mill. He had attended for his father to the renting of it. He knew its condition at the time of the appropriation, and the relation of the water power as it then was to the demands made upon it. He knew that after the appropriation there was a diminution of the water power, though he could measure neither the amount of water running through the race before or after by gallons, nor the energy derived from it by horse power. He knew the general market value of properties in the neighborhood about 1902. It would seem that Lee v. Water Co., 176 Pa. 233, is directly in point as an authority vindicating the admission of this witness's opinion.

James S. Ammon was raised as a miller and had a mill at the time of the trial, besides being a contractor. He had known plaintiff's mill for forty years, and was acquainted with the general market value of real estate in the neighborhood about 1902. He knew of no sales of mill properties there about that time, neither could he give the extent of the loss to the plaintiff's mill by defendant's appropriation in gallons, cubic feet or horse power. But he knew that previously the water power was good. He was permitted to express his opinion as to the difference in market values upon the assumption that before the appropriation the mill had a water supply sufficient for the capacity of its equipment (with which he was familiar) and thereafter an inadequate one—facts appearing not only by his own deposition, but elsewhere in the evidence. Again the objection to this witness would seem to go to the weight of his evidence, rather than to its competency, under the decision last cited.

Albert Thalheimer, a manufacturer living in the city of Reading, but acquainted with plaintiff's mill for thirty-six or more years down to the time of trial, and in a general way with the market value of property in the neighborhood before 1902, knew by information that the mill had, before the appropriation, a water power equal to fifteen horse power, and had had occasion to inform himself by inquiry as to the value of mill properties during the past ten years. O'Brien v. Railway Co., 194 Pa. 336, seems to justify the admission of this witness's opinion.

George G. Ruth is the only remaining witness to the reception of whose testimony the reasons assigned in support of this rule object. The objection, however, was not pressed at the argument. Whilst that circumstance might well be regarded as a waiver of the objection, an examination of his testimony leads to the conviction that he was entirely competent to give it under every rule recognized on the subject.

Isaac S. Spatz is not one of the witnesses alleged in the reasons filed to have been incompetent to express the opinion he was permitted to give; but he was referred to as such at

the argument. He lived at Mohnton, knew plaintiff's mill for twenty-five years including 1902; and had a general knowledge of market values of property in the vicinity at that time. He did not know how much water was taken from the mill or to what in horse power its loss amounted. He did, however, know what effect it had upon the running of the mill. He hesitated about expressing an opinion as to the consequent difference in the market value of the property, but finally gave it. What is said in Railway Co. v. Vance, 115 Pa. 325, 332, applies to this witness exactly.

It is perhaps true that all this evidence was lacking in certain elements of precision. In part this may be regarded as attributable to the indefinite character of the defendant's petition under which the issue was framed, and which in an important sense is to be treated as a pleading underlying the trial: Miller v. Water Co., 148 Pa. 429; P. & R. R. R. Co. v. R. & P. R. R. Co., 12 Pa. C. C. Rep. 513. That petition avers simply the appropriation of "part of the water of" a certain stream, without designating any quantity. Necessarily the issue framed was equally indefinite, and the plaintiffs' testimony went no further than the exigencies of the issue demanded. Had the petition and issue been more precise, it may be that the competency of the witnesses offered to sustain the plaintiff's side of it would have had to be tested by a more stringent rule in order to make their testimony responsive to the inquiry involved. It is to be observed, however, that more detailed data were furnished by the testimony adduced on behalf of the defendant, whereby the jury was enabled to judge of the accuracy of the evidence submitted on behalf of the plaintiff and the value of the opinions of their witnesses on the effect of the appropriation upon plaintiff's property. Nor ought it to be overlooked that the verdict, fixing the depreciation of the same in 1902 at $3,700, is far below the estimate of plaintiffs' witnesses, averaging about $9,000.

Upon the whole, the reasons urged in support of this application do not appear to be sufficient to warrant the granting of it, and, therefore, the rule to show cause is discharged.

Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions; (5) above instruction, quoting it.

*C. H. Ruhl*, with him *Dumn & Schœffer*, for appellant.— This court has declared in many cases, what knowledge of the subject-matter the witness must necessarily possess to make his testimony admissible as expert testimony: Pittsburg, etc., Railway Co. v. Vance, 115 Pa. 325; Michael v. Pipe Line Co., 159 Pa. 99; Friday v. Railroad Co., 204 Pa. 405.

The jury were erroneously instructed to include interest on the sum allowed as the proper measure of damages: Reading, etc., R. R. Co. v. Balthaser, 126 Pa. 1; Klages v. Terminal Co., 160 Pa. 386; Emerson v. Schoonmaker, 135 Pa. 437; Becker v. Railroad Co., 177 Pa. 252.

*John B. Stevens*, with him *Garrett B. Stevens*, for appellees.

OPINION BY MR. JUSTICE MESTREZAT, March 15, 1909:

The first four assignments allege error in permitting certain witnesses of the plaintiff to testify. The ground of the objection is that they did not sufficiently qualify themselves to testify in the cause. In his opinion, discharging the rule for a new trial, the learned judge of the court below reviewed the testimony affecting their competency and, as he points out, they were clearly admissible under our decisions.

The fifth assignment alleges error in that part of the charge of the court in which it is said that the jury may allow interest on the damages ascertained to be due the plaintiff in 1902. If this part of the charge stood alone, or was all that the court said on the subject, the assignment would have to be sustained. It is now well settled in this jurisdiction that interest, eo nomine, cannot be allowed on damages in condemnation proceedings. It is, therefore, reversible error for the court to charge the jury that interest, as such, may be allowed on the damages which they find to be due the landowner. This we have frequently held. The court, however, should instruct the jury that in ascertaining the amount of their verdict they may consider the lapse of time between the taking of the

property and the time of trial as an element of damages, or as compensation for the delay in payment of the sum due the plaintiff for the injuries he has sustained. It is wholly within the province of the jury to determine whether the plaintiff is entitled to any additional sum for the delay, and if so, what amount will compensate him for the delay. They may allow a sum not exceeding six per cent, but they can allow a smaller amount, just as they think the circumstances require in order to make the plaintiff whole. It is, therefore, purely a question for the jury to determine whether any or what sum shall be added to the amount of damages ascertained to be due as of the date of the appropriation of the plaintiff's property.

The correct rule in such cases, as stated, was recognized by the learned judge in his charge, and we have no doubt that the jury fully understood it and acted upon it in determining the amount of the damages due the plaintiffs. Both parties to the litigation agreed that the measure of damages was the difference in the market value of the property immediately before and after the appropriation by the defendant company. In the first part of his charge the learned judge said: "If, after ascertaining this (the difference in the market value of the property before and after the appropriation), in your judgment the plaintiff will not be made whole by reason of delay or other reasons, you may, as additional damages, allow interest from the time of the appropriation to date. That is a question, however, for the jury." In the concluding part of the charge proper, the court said: "Take the property as it stood before the company appropriated the water and ascertain its fair market value. Take it as it stood after the company appropriated the water, ascertain its market value then, and the difference is the measure of damages, with interest, as I have already indicated, if you see proper to give that." It is clear, therefore, that the learned judge correctly charged the jury as to allowing additional damages for the delay in compensating the plaintiff for the injuries he had sustained by the appropriation of his property. The parts of the charge quoted left no doubt in the minds of the jurors as to their duty in passing upon that question. The alleged error

occurred when the court answered the defendant's point for instruction. The appropriation of the plaintiffs' property was made in 1902, but there was evidence as to the value of the property in 1875, and the defendant by its point requested the court to instruct the jury that the price paid for property in 1875 was not evidence of the market value of the plaintiffs' property in 1902. The court affirmed the point, and in giving his reasons therefor committed the alleged error complained of. What was said, however, was merely to impress upon the jury their duty to eliminate from their consideration the prices of property in that neighborhood in 1875. What the learned judge said in reference to the allowance of interest was in view of the fact that, as he told the jury, the damages must be assessed as of the year 1902; and it must be considered in connection with the parts of the charge in which the court distinctly told the jury, both at the beginning and conclusion of its remarks, that they might allow interest as additional damages for the detention of the amount due the plaintiff. The language of the court in its supplemental instructions in answer to the defendant's point clearly shows, and the jury would understand, that it was solely within their discretion to allow interest as compensation for the time intervening between 1902 and the date of the trial. The remark of the court complained of was manifestly not regarded as objectionable to the defendant at the time because the court's attention was not called to it, nor subsequently on the application for a new trial as it was not presented nor urged as a reason for a retrial of the cause. We think it did not mislead the jury or give them a rule for considering the question of interest different from the correct rule laid down in the two parts of the charge quoted above.

It may be well to suggest that in cases of this character the court should be careful in stating the rule upon this subject. As pointed out in our cases, there are many instances in which the plaintiff has caused the delay in the payment of his damages and where, therefore, he is not entitled to any additional sum on the amount due him as of the date of the appropriation. In actions ex contractu, the plaintiff is entitled as of right to in-

terest on any fixed sum that may be found due him; and the jury, unless clearly and positively instructed, may infer in actions of tort, that he is also entitled to interest on the damages awarded him.   If he has not caused the delay in the ascertainment and payment of the damages, the delay is an element which should be considered by the jury in ascertaining the amount of their verdict; but where his action has unreasonably prevented a settlement for the amount due him and the defendant company has not been at fault, he should not be compensated for his own wrong.   In all such cases, therefore, the jury should receive explicit instructions by the court as to their duty in disposing of the question.

By inadvertence, "an estate" was made the plaintiff in this case instead of the executors of the testator to whom the damages are payable and with whom the petition avers the defendant made an attempt to settle for the compensation due for the damages sustained.   This error runs throughout the proceedings and manifestly escaped the attention of the court below.   We correct the error here.

The assignments of error are overruled, and the judgment is affirmed.