Gitlin *v.* Pennsylvania Turnpike Commission, Appellant.

Argued January 3, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Thomas E. Waters,* with him *Harry C. Pepper, Edward L. Springer,* Deputy Attorney General, *Herbert B. Cohen,* Attorney General, and *Waters, Cooper & Gallagher,* for appellant.

*Conrad G. Moffett,* with him *Hankin, Hankin & Shanken,* for appellees.

OPINION BY MR. JUSTICE JONES, March 13, 1956:

On March 4, 1952, the Pennsylvania Turnpike Commission formally adopted a resolution, pursuant to authority conferred on it by the Act of May 23, 1951, P. L. 335, locating its Delaware River Extension and condemning the private property necessary therefor, according to attached plan approved by the Governor and the Department of Highways. The resolution established the center line of the proposed extension by compass directions and distances and fixed the width of the right of way at one hundred feet on each side

of the center line for a total width of two hundred feet together with such additional lands as were necessary for the slopes of cuts and fills and such further lands as were deemed necessary by the Commission "for ramp approaches, maintenance sheds, gasoline stations, restaurants, power facilities, waste banks, borrow pits and other facilities including tunnels . . . ."

At the date of the resolution (viz., March 4, 1952), the plaintiffs were the owners of certain property in Upper Moreland Township, Montgomery County, containing 8.281 acres and improved with two dwellings. The property fronted on Easton Road, Highway Route 611, which, in the locality, runs in an almost north and south direction. The center line of the turnpike extension, as described in the resolution, ran through the plaintiffs' property from west to east, and the two hundred foot strip thereby appropriated lay to the north of the two dwellings and other buildings located on the plaintiffs' property. Some fourteen months later, the Commission, deeming it essential that an interchange at Route 611 be constructed, appropriated additional property of the plaintiffs to the extent of 7.14 acres in all. This increased appropriation, which included the two houses, was accomplished by means of a revised plan formally adopted by the Commission on May 8, 1953.

On the plaintiffs' petition, the court below appointed a board of view for the ascertainment of the damages due the plaintiffs for the appropriation of their property. At the hearing before the viewers, the plaintiffs offered testimony, over the Commission's objection, as to the value of their condemned property both at the date of the original resolution of March 4, 1952, and at the time of the Commission's adoption of the revised plan on May 8, 1953. The question as to which date should be taken in determining the value of

the property appropriated was considered to be of particular importance by reason of the fact that, between the two dates, the zoning regulations of the township were amended. Thereby, the zoning classification of the plaintiffs' property, inter alia, was changed from "A Residential" to "G.G. Industrial" with a resultant increase in the value of the property in the opinion of the plaintiffs' real estate experts.

The Commission contends that the condemnation took place in its entirety with the passage of the resolution of March 4, 1952, whereas the plaintiffs maintain that the two hundred foot strip was all of their property that was condemned by the resolution and that the balance of the appropriation did not occur until the Commission formally adopted the revised condemnation plan on May 8, 1953. The viewers approved the latter contention and appraised the value of the whole of the appropriated property accordingly. As a compromise between the two dates in figuring the damages due detention of payment, the viewers adopted four per cent instead of six as the rate per annum of the damage for delay in payment of the value of the property taken.

The Commission filed exceptions in the court below to the viewers' report and award, as did also the plaintiffs who charged error in the viewers' failure to conclude as a matter of law that the effective date of the taking of the property was May 8, 1953. The Commission's exceptions, while more extensive than the owners', went substantially to two matters, viz., (1) the action of the viewers in receiving testimony as to the value of the condemned property on May 8, 1953, as well as on March 4, 1952, and (2) the viewers' allowance in their award of an item for damages for delay in payment. The learned court below satisfactorily disposed of all exceptions in an able and comprehensive

opinion and entered an order overruling the exceptions and confirming absolutely the viewers' report and award from which order the Commission has appealed.

Nothing more would need be said with respect to the appellant's contentions were it not for the persistence with which it insists upon advancing the argument that it is not liable for damages for delay in payment of the sums due for property which it appropriates by condemnation. See, also, *Simpson v. Pennsylvania Turnpike Commission,* 384 Pa. 335, 121 A. 2d 84. The appellant bottoms this contention upon the assertion that the Commonwealth is not liable in damages for delay in payment for property condemned by it and that, since the Turnpike Commission is an instrumentality of the Commonwealth, it is likewise free from liability in such regard. The fallacy in the argument is twofold: (1) the major premise is erroneous and (2) the Commission is not the Commonwealth. And, even if it were entitled to the sovereign's immunity from liability for interest, it would still be answerable in damages for delay in payment for property condemned. In *Fidelity-Philadelphia Trust Company v. Commonwealth,* 352 Pa. 143, 145, 42 A. 2d 585, the principal question for decision was "whether an owner of property appropriated by or in behalf of the Commonwealth of Pennsylvania through condemnation is entitled to damages for delay in payment of the sum ascertained to be reasonable compensation for the property so taken." We unequivocally answered that question in the affirmative. Nor could the rule be otherwise without palpably violating the State Constitution.

Article I, §10, of the Constitution expressly ordains that private property shall not be taken or applied to public use without just compensation being first made or secured. It has long been recognized that one of the elements to be taken into consideration in

determining what is *just* compensation for property condemned is the damage due to delay in payment over the period between the exercise of the right of eminent domain and the final adjustment of the damages inflicted by it: *Klages v. Phila. & Reading Terminal Co.,* 160 Pa. 386, 390, 28 A. 862. It was there said that: "The compensation must be a just one at the time its amount is settled . . . ." Earlier, in observing that, in such cases, interest is not allowed as interest but as damages, this court said that "If it were otherwise a person whose property has been taken, injured, or destroyed would not receive full satisfaction": *Penn. Schuyl. V. R. Co. v. Ziemer,* 124 Pa. 560, 571, 17 A. 187. Even the appellant would hardly deny, especially at this late date, that compensation for delay in payment is a proper element of the damages payable for an appropriation of private property by a municipality or other corporation possessing the power of eminent domain: see cases cited in *Fidelity-Philadelphia Trust Company v. Commonwealth,* supra. Yet, wherein is the difference, so far as *just* compensation to the condemnee is concerned, between an appropriation by the Commonwealth and one by a municipality or private service corporation? The power exercised is the same in both instances. The power of eminent domain inheres in the sovereign and its exercise by a municipality or other corporation is permitted alone by virtue of the sovereign's grant.

*Culver v. Commonwealth,* 348 Pa. 472, 35 A. 2d 64, upon which the appellant heavily relies, is not in point as even a cursory reading of the opinion should at once disclose. The rationale of the decision in the *Culver* case is that the Commonwealth is not liable to pay interest on its debts unless bound so to do by statute or by contract of its executive officers. In that case, the damages recoverable for the property taken by con-

demnation had been reduced to a judgment entered on a jury's verdict after a trial of the issue of damages in the court of common pleas upon an appeal thereto from an award of viewers. The verdict concluded all elements of damages to which the owner was entitled, including compensation for delay in payment. The one question involved in the *Culver* case, supra, was whether the Commonwealth was liable for interest on the judgment. As we endeavored to explain in distinguishing the *Culver* case in *Fidelity-Philadelphia Trust Company v. Commonwealth*, supra, until a binding judgment is entered against the Commonwealth in a land condemnation proceeding, either by way of an award of viewers or a jury's verdict, there is no debt and, consequently, no question of interest. Damage for delay in payment of the property value is not interest. While measured by a rate per cent, it is recoverable as damages and not as interest: *Whitcomb v. Philadelphia,* 264 Pa. 277, 284, 107 A. 765. In the instant case, there is as yet no binding judgment against the Commonwealth which concludes the quantum of the damages due the plaintiffs; hence, no question of liability for interest is in any way involved.

The appellant further argues that the appropriation of the additional property of the plaintiffs necessary for the construction of the interchange in accordance with the Commission's revised plan of May 8, 1953, was condemned by virtue of the resolution of March 4, 1952. Of course, the resolution of March 4, 1952, constituted a condemnation but only to the extent shown on the duly approved plan expressly made part of the resolution. In *Lakewood Memorial Gardens, Inc. Appeal,* 381 Pa. 46, 52, 112 A. 2d 135, we held on the basis of decisional law that "the Commission's formal adoption of the condemnation resolution which set forth the location of the proposed turnpike [western] extension

by description and plans, approved by the Governor and Department of Highways, constituted an appropriation of the indicated properties." Section 8 of the Act of 1951, supra, which authorized the construction of the Delaware River extension, from which the present proceeding stems, expressly provides that the date of the resolution shall be the effective date of the condemnation. Manifestly, that cannot mean that the condemnation embraces more property than was described in the resolution and identified by the attached plan.

All that was condemned by the resolution of March 4, 1952, was the two hundred foot strip and such additional ground as was necessary for the natural slopes of the cuts and fills. The property outside those bounds, which the Commission later deemed necessary for the construction of the interchange, was not appropriated until May 8, 1953, when the Commission formally adopted the revised plan showing the further taking. The appellant argues, however, since the Act of 1951, supra, providing for the construction, operation and maintenance of the Delaware River extension, authorized the Commission to condemn additional property "for ramp approaches, maintenance sheds, gasoline stations, restaurants, power facilities, waste banks, borrow pits and other facilities including tunnels", that the resolution of March 4, 1952, *ipso facto* condemned to the full limit of the Commission's statutory power without identifying the precise property subject to the intended appropriation. The contention is obviously untenable. No property owner, abutting on the two hundred foot strip or at the bottom of the slopes of the cuts or fills, could possibly know how much additional of his land would be occupied for one or more of the statutorily authorized purposes not included in the plan made part of the condemnation resolution.

The Commission's counsel cited at bar *Foley v. Beech Creek Extension R. R. Co.*, 283 Pa. 588, 129 A. 845. But, that case affords the appellant no comfort. There, the railroad company, acting under its charter powers to condemn private property, pursuant to an enabling Act of February 19, 1849, P. L. 79, located, by resolution duly adopted, the center line of its proposed road. The Act authorized and empowered the officers, directors and engineers of the railroad to "fix, mark and determine such route for a railroad as they may deem expedient . . . and not, except in the neighborhood of deep cuttings or high enbankments . . ., to exceed sixty feet in width . . . ." The plaintiffs, who were objecting property owners, conceded the company's right to take their land to the extent of sixty feet in width but urged that the condemnation proceedings were ineffective as to any land in excess of sixty feet. The court below permitted the railroad to take additional land to the extent needed for the slopes of the cuts and fills. That is all that was involved in that case. And, while there is a statement in the opinion implying that the resolution condemning the sixty foot strip also permitted the railroad to take such land as was necessary for "stations, sidings and turnouts" not noted on the plan, the statement was a patent dictum for the court immediately went on to say that "When the petition for approval of the bond is filed, *accompanied by a map designating the extent of the land to be taken*, the owner knows precisely the quantity of land the company proposes to take" (Emphasis supplied). The same is equally true here.

In the instant case the viewers correctly concluded that there were two separate appropriations of the plaintiffs' property, one on March 4, 1952, and the other on May 8, 1953. Accordingly, the viewers admitted in

evidence testimony as to the value of the land in question at both times in order to give consideration to the differing values between the two dates. Of course, the appraisal of the value of the property taken had to be of the appropriations as a whole and not piecemeal. And, the course pursued by the viewers in determining the value of the appropriated property was a sort of Solomonic approach for the just solution of a complicated situation. That the viewers achieved justice was the considered conclusion of the learned court below with which we fully agree.

Order affirmed at the appellant's costs.