Waugh *v.* Commonwealth, Appellant.

Argued October 8, 1958. Before JONES, C. J., BELL, MUSMANNO and JONES, JJ.

*Leonard M. Mendelson,* with him *John W. Mamula, Frank E. Roda,* Assistant Attorney General, and *Thomas D. McBride,* Attorney General, and *John R. Rezzolla, Jr.,* Chief Counsel, Department of Highways, for appellant.

*J. Alfred Wilner,* with him *James Craig Kuhn, Jr.,* and *Wilner, Wilner and Kuhn,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 25, 1958:

This appeal presents a very narrow issue; in an eminent domain action, in which no evidence was introduced as to the normal commercial rate of interest during the period of detention, should the trial court have instructed the jury to award detention money[1]

---

[1] "Detention money" is used synonymously with compensation awarded by reason of delay in payment of damages by the condemnor to the condemnee or, stated otherwise, "the damage due to delay in payment over the period between the exercise of the right of eminent domain and the final adjustment of the damages inflicted by it": *Gitlin v. Pennsylvania Turnpike Commission,* 384 Pa. 326, 121 A. 2d 79.

(1) at the rate of 6% per annum or (2) at *any* rate the jury saw fit, not exceeding 6% per annum?

The Commonwealth of Pennsylvania in the exercise of its power of eminent domain condemned appellee's property for highway purposes. A jury awarded verdicts for the freehold owner of $25,575 and for the leasehold owner of $12,834. After the appellant moved for a new trial the parties then stipulated in substance: (1) that appellant would immediately pay $22,000 to the freehold owner and $11,040 to the leasehold owner; (2) that payment of the balance of the jury's award ($5,369)—the amount of the detention money—would depend upon the adjudication of the propriety of the trial court's jury instruction on the subject of detention money.

On this subject the trial court charged: "Now, in addition to the fair market value of the property at the time of the condemnation, plaintiffs are also entitled to receive money damages to compensate them for the detention of their money unless you would find their claims for damages are exorbitant. Now, this additional sum is called detention money. It is not strictly speaking interest. It is, however, computed as interest. It is to be presumed that the interest during the period of detention was the 6%. We have no evidence to the contrary. Therefore, any sum awarded the plaintiffs for the fair market value of the various interest involved will be increased by a sum based on 6% interest for 32½ months which is the period of detention, and which has been agreed[2] upon by counsel for the plaintiffs and counsel for the Commonwealth. This interest is simple interest, and is not to be compounded."

---

[2] The parties agreed on the period of detention, not the rate of interest.

The appellant presented a point for charge which the trial court refused, said point reading: "If you decide to allow the plaintiffs detention money, you may allow it at any rate you see fit, not exceeding six percent per annum."

An examination of this portion of the court's charge indicates the jury was instructed that, unless appellees' claims for damages were found to be exorbitant, appellees were entitled to detention money computed as interest and, in the absence of any evidence as to the ordinary commercial rate during the detention period, the jury were to presume such rate to be 6% and, therefore, any sum awarded to the appellees as the fair market value of their property would be increased by a sum based on 6% for the period of detention.[3]

Detention money in eminent domain cases is not awarded as a matter of right but only as the circumstances of the particular case dictate that compensation for delay in payment should be made.[4] It is not disputed that the instant case properly called for the award of detention money.[5]

---

[3] The opinion of the court below fully supports this interpretation of its charge.

[4] For instance, the condemnee's demand may have been so exorbitant as to justify the condemnor in refusing to pay or the condemnee may have been otherwise at fault. *Ross v. Pennsylvania. R. R. Co.*, 14 W.N.C. 143; *Philadelphia Ball Club v. Philadelphia*, 192 Pa. 632, 44 A. 265; *James v. West Chester Borough*, 220 Pa. 490, 69 A. 1042; *Wayne v. Pennsylvania R. R. Co.*, 231 Pa. 512, 80 A. 1097.

[5] Justification for the allowance of detention money was aptly set forth by Mr. Justice MITCHELL in *Richards v. Citizens Natural Gas Company*, 130 Pa. 37, 39, 40, 18 A. 600: "Interest as such is recoverable only where there is a failure to pay a liquidated sum due at a fixed day, and the debtor is in absolute default. It cannot, therefore, be recovered in actions of tort, or in actions of any kind where the damages are not in their nature capable of exact

The court below relied principally on the language of this Court in *Whitcomb v. Philadelphia,* 264 Pa. 277, 284, 107 A. 765: "When land is taken under the power of eminent domain, the owner thereof acquires the right to its value immediately upon appropriation. Until that value has been definitely ascertained, it is called damages not a debt due; but when ascertained it relates back to the time of taking, and the owner is entitled to compensation for delay in its payment, unless just cause be shown to the contrary: Wayne v. Penna. R. R. Co., 231 Pa. 512; Hoffman v. Phila., 250 Pa. 1; and 261 Pa. 473. This compensation, like all other charges for wrongfully withholding money, is measured by an interest rate recoverable as damages. This rate will be the normal commercial rate during the period of detention. If no evidence is given as to that rate, the presumption is that the legal rate was in effect." Further the Court said (p. 285) : "The appellee did not name an exorbitant price, or do anything to delay the settlement of her claim; as no rate of

---

computation, both as to time and amount. In such cases the party chargeable cannot pay or make tender until both the time and the amount have been ascertained, and his default is not therefore of that absolute nature that necessarily involves interest for the delay. But there are cases sounding in tort, and cases of unliquidated damages, where not only the principle on which the recovery is to be had is compensation, but where also the compensation can be measured by market value, or other definite standards. Such are cases of the unintentional conversion or destruction of property, etc. *Into these cases the element of time may enter as an important factor, and the plaintiff will not be fully compensated unless he receive, not only the value of his property, but receive it, as nearly as may be, as of the date of his loss.* Hence it is that the jury may allow additional damages, in the nature of interest, for the lapse of time. It is never interest as such, nor as a matter of right, but compensation for the delay, of which the rate of interest affords the fair legal measure." (Emphasis supplied).

interest was submitted at the trial, she was entitled to the legal rate as damages, . . ."[6]

The *Whitcomb* rule has been cited frequently with approval by this Court: *Pennsylvania Co. for Insurances on Lives v. Philadelphia,* 268 Pa. 559, 565, 112 A. 76; *Miles's Estate,* 273 Pa. 124, 128, 129, 116 A. 668; *Fidelity-Philadelphia Trust Co. v. Simpson,* 293 Pa. 577, 587, 143 A. 202; *Lackawanna Iron & Steel Co. v. Lackawanna & Wyoming Valley R. R.,* 299 Pa. 503, 507, 149 A. 702; *Fidelity-Philadelphia Trust Co. v. Commonwealth,* 352 Pa. 143, 146, 42 A. 2d 585; *Adams v. New Kensington,* 374 Pa. 104, 111, 97 A. 2d 354; *Gitlin v. Pennsylvania Turnpike Commission,* 384 Pa. 326, 332, 121 A. 2d 79.

Appellant, however, urges that other Pennsylvania appellate court decisions conflict with the *Whitcomb* rule and require that a jury be instructed that, even in the absence of evidence as to the normal commercial rate of interest during the period of detention, the jury can find *any* rate of interest not exceeding 6%. After an examination of the decisions upon which appellant relies we are in accord with Judge MORRISON'S observation in *Shevalier v. Postal Telegraph Co.,* 22 Pa. Superior Ct. 506, 513: "The long line of cases upon this question do not seem to be in entire harmony, but we are inclined to the opinion that the difficulty is

---

[6] As the trial judge indicated: "The language used by the lower court [in the Whitcomb case] seems to be much more positive in telling the jury they can allow 6% interest than the language used by the trial judge in the instant case." The lower court had charged: "Now, gentlemen, when you conclude what the value of the property was in July 1916, you will render a verdict for the plaintiff for that amount and add to it interest at the rate of 6% from July 27, 1916, down to the date of your verdict. The owner of the property was entitled to whatever you determine was the value of the property as of that date, and of course, not having received it, she is entitled to the earning power, which the law fixes at 6%, and to your verdict should be added that amount."

more apparent than real. *We think the apparent contradictions of the cases grow more out of what was said than what was decided.*" (Emphasis supplied). In the *Shevalier* case the Superior Court disapproved an instruction which bound the jury "to add legal interest to the sum of the unliquidated damages which they should fix by their verdict." However, the present question was not raised and an examination of that opinion clearly indicates its emphasis was not on the amount of interest but rather upon the fact that the jury was not bound to add legal interest or any interest "unless there is something in the particular case which would justify their going to that extent." Similarly in both *Mengell's Executors v. Mohnsville Water Co.*, 224 Pa. 120, 73 A. 201 and *Stephens v. Cambria & Indiana R. R. Co.*, 242 Pa. 606, 89 A. 672, our emphasis was upon the fact that interest, as such, for detention is not to be automatically assessed by the jury once they have determined the fair market value to be awarded to the condemnee for the taking. While we did say in the *Mengell* case (p. 127) that the jury could allow "a sum not exceeding six per cent, but they can allow a smaller amount," such was clearly by way of dictum as far as the present question is concerned, and was related solely to the right of the jury to diminish damages for detention because of the particular circumstances of the case, or by virtue of the condemnee's actions.[7] No question was raised in any of the cases cited by appellant as to the propriety of an instruction such as that now before us, where no

___

[7] In *Klages v. Phila. & Reading Terminal Co.*, 160 Pa. 386, 28 A. 862 this Court held that, since the record indicated that the landowner received a net income from the property taken, of between three and four per cent of its value the allowance of 6% on that value from the time of taking to the time of the verdict would be unjustified. This case well illustrates the situation where the condemnor receives the benefit of a rate of interest

evidence was introduced as to the legal rate of interest, and it was admitted by the condemnor that detention damages were properly awarded, subject only to a determination of the proper rate. None of the actual rulings embodied in those decisions—*all decided prior to the Whitcomb decision*—conflict with the *Whitcomb* rule nor are they decisive of the question presently before this Court.

An examination of the *Whitcomb* case clearly indicates that the principle therein enunciated is that, *in the absence of any evidence of the normal commercial rate of interest during the period of detention, a presumption arises that such rate is the legal interest rate of 6%.* Whether this principle requires that the jury in such a situation arrive at the amount of detention money only on the basis of the legal rate of interest depends on the legal effect of a "presumption".[8]

In 9 Wigmore, Evidence §2491 (3rd ed.), it is said: "The peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to

---

lower than the legal rate if evidence is produced that the legal rate is not the appropriate rate for the jury's consideration.

[8] A presumption is neither evidence nor a substitute for evidence: *Watkins v. Prudential Life Insurance Co.*, 315 Pa. 497, 173 A. 644. Our Federal Courts have said: "Inferences or presumptions speak in the absence of evidence, but cannot be weighed in the balance as against evidence . . .": *Guaranty Trust Co. v. Minneapolis & St. Louis RR. Co.*, 36 F. 2d 747, cert. den. 281 U.S. 756, 74, L. Ed. 1166. We have said: "Presumptions are resorted to for the purpose of supplying the want of positive proof. When positive proof is available there is no room for the presumption": *I. X. Grier v. Penna. Coal Co.*, 128 Pa. 79, 98, 99, 18 A. 480; *Philip Keller v. Mary P. Over*, 136 Pa. 1, 20 A. 25.

the contrary. (sufficient to justify the judge's require-
ment of some evidence), the presumption disappears
as a rule of law, and the case is in the jury's hands
free from any rule . . . It is, therefore, a fallacy to at-
tribute . . . an artificial probative force to a presump-
tion, increasing for the jury the weight of the facts,
even when the opponent has come forward with *some*
evidence to the contrary." In accord with this view,
we have recently stated in *Waters v. New Amsterdam
Casualty Co.*, 393 Pa. 247, 251, 144 A. 2d 354: "Since
the presumption is no more than a procedural. tech-
nique designed for trial convenience to facilitate. the
production of proof by requiring the party with easier
means of access thereto to come forward with evidence,
its consequence may be stated as follows: *If the de-
fendant fails to introduce credible evidence negating
[the presumption], then the issue is decided in favor
of the plaintiff as a matter of legal ruling:*" (Empha-
sis supplied). In the present case, the appellant failed
to produce *any* evidence to rebut the presumption that
the legal rate is the rate to be used for present pur-
poses.

Absent a presumption and absent *any* evidence as
to the commercial rate of interest during the period of
detention, in what manner can a jury arrive at the
amount of detention money? As Mr. Justice (now
Chief Justice) JONES said in *Fidelity-Philadelphia
Trust Co. v. Commonwealth*, 352 Pa. 143, 146, 42 A.
2d 585: "In determining by legal proceedings the
quantum of the debt due for the taking, damages for
delay in payment is a proper element. It is not inter-
est. While 'measured by an interest rate [it is] re-
coverable as damages': See Whitcomb v. Philadelphia,
264 Pa. 277, 284, 107 A. 765 *which also specifies how
the measuring rate may be arrived at.*" (Emphasis sup-
plied).

Unless we are to permit a jury to arrive at the amount of detention money by conjecture or speculation there must be some yardstick to guide them in their determination. The *Whitcomb* case delineates this yardstick. It decides that if there is no evidence as to the normal commercial rate of interest during the detention period, the law, by resorting to a presumption, will set up such a standard. If the legal rate of interest during the period of detention is not the normal commercial rate, all the condemnor is required to do is offer proof of what the normal commercial rate of interest was during the period of detention. Upon the introduction of such proof, the presumption of the *Whitcomb* case disappears. If we are to adopt a rule that a jury may award detention money on the basis of *any* rate of interest not exceeding 6% in the absence of *any* evidence whatsoever to guide the jury in arriving at the appropriate rate of interest then speculation and conjecture, rather than proof, form the basis of the jury's award.

Under the instant circumstances we have no recourse other than to follow the principle of the *Whitcomb* case and approve the instruction of the court below that, in the absence of evidence to the contrary, there is a presumption that the normal commercial rate of interest during the detention period was the legal rate of interest and that the amount of detention money, if any, to be awarded should be on the basis of such legal rate of interest. A condemnor, without the expenditure of either considerable money or effort, can avoid the effect of this ruling simply by proving as to the condemnee that the legal rate was not the ordinary commercial rate of interest during the period of detention.

Judgments affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.