IN THE COMMONWEALTH COURT OF PENNSYLVANIA

York OPA, LLC                 :

                                     :

               v.                   :     No. 12 C.D. 2017

                                       :

Commonwealth of Pennsylvania,   :     Argued: September 14, 2017
Department of Transportation,     :
                  Appellant     :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
JUDGE McCULLOUGH                           FILED: March 20, 2018


The Commonwealth of Pennsylvania, Department of Transportation (DOT) appeals from the December 9, 2016 opinion and order of the Court of Common Pleas of York County (trial court), which overruled DOT's preliminary objections to the petition for appointment of a board of viewers filed by York OPA, LLC (OPA). We affirm in part and reverse in part.

## Facts and Procedural History

On June 20, 2011, DOT filed a formal declaration of taking (Declaration) pursuant to the Eminent Domain Code (Code),[1] seeking to acquire 0.154 acres in fee simple title for the purpose of widening State Route (SR) 124, also known as Mt. Rose Avenue, and 0.127 acres as a temporary construction easement

---

[1] 26 Pa.C.S. §§101-1106.

from real estate owned by OPA in Springettsbury Township (Township), York County, which commercially operates as the Eagle's Nest Restaurant (the OPA Property). (Reproduced Record (R.R.) at 21a-27a.) DOT filed a plan of condemnation (Plan) with the Declaration that identified the areas subject to the requested taking. In addition to the OPA Property, the Plan also identified a 0.142-acre area that DOT set forth as an existing legal right-of-way. (R.R. at 27a.) OPA did not file preliminary objections to the Declaration. (R.R. at 76a-77a; OPA's Petition for Appointment of Board of Viewers dated 1/6/14, at ¶2.) The matter before us pertains solely to the 0.142-acre area.

On January 6, 2014, two years after DOT filed the Declaration, OPA petitioned for the appointment of a board of viewers to assess damages for DOT's taking of the OPA Property, as well as the additional 0.142-acre area. (R.R. at 76a-77a.) At a two-day hearing held before the board of viewers in September 2014, OPA claimed ownership of the 0.142-acre area that was designated as an existing right-of-way in the Plan. (R.R. at 3a; OPA's Petition for Appointment of Board of Viewers dated 10/30/14, at ¶15.) OPA asserted that it first discovered that the 0.142-acre area was not an existing right-of-way during its preparations for the proceeding before the board of viewers. (*Id.* at ¶12.) DOT objected to OPA's assertion, arguing that OPA had not properly challenged the Plan's designation of the 0.142-acre area as an existing right-of-way by filing preliminary objections to the Declaration. Ultimately, the board of viewers awarded damages for the OPA Property taken pursuant to the Declaration and depicted on the Plan (*i.e.*, the 0.154-acre and 0.127-acre tracts), but did not award damages with respect to the 0.142-acre area. OPA appealed the board of viewers' decision, requesting a jury trial *de novo*, and that action remains pending with the trial court.

2

On October 30, 2014, following the board of viewers' proceeding regarding the formal condemnation, OPA initiated a collateral action and filed the second petition for the appointment of a board of viewers pursuant to Section 502(c) of the Code, and it is that second petition that is now before this Court. (R.R. at 1a-10a.) In its second petition, OPA attacked the Plan through an allegation of inverse condemnation. (*Id.*) Specifically, OPA argued that DOT never acquired the 0.142-acre area from OPA or otherwise, and that OPA did not receive just compensation for that 0.142-acre area from DOT. (*Id.* at ¶16.) Thus, OPA contended DOT inversely condemned that area once construction to expand SR 124 began, and, accordingly, OPA requested additional just compensation under the Code for the 0.142-acre area. (*Id.* at ¶17.)

On December 1, 2014, DOT filed preliminary objections to OPA's second petition for appointment of a board of viewers, asserting, *inter alia*, that OPA waived any challenge to the nature and extent of the OPA Property's ownership, including the 0.142-acre area, as represented in the Declaration, because OPA failed to file preliminary objections to the Declaration. (R.R. at 11a-41a; DOT's Preliminary Objections.) DOT further asserted that OPA lacked standing to bring the action because it was not the record owner of the property at the time of the alleged taking when the Township accepted the 0.142-acre area in 1991. On February 22, 2016, the trial court held oral arguments to consider DOT's preliminary objections.

On February 23, 2016, the trial court ordered both parties to submit a rendering of the 0.154-acre required right-of-way and the 0.142-acre right-of-way depicted in DOT's Plan. (R.R. 85a-86a; Order Requesting Additional Information.) The trial court also directed the parties to provide a brief narrative regarding title to

3

the 0.142-acre area. (*Id.*) In response to the trial court's directives regarding the 0.142-acre area, DOT submitted (1) a 1799 deed establishing a 33-foot width right-of-way along the current SR 124 (R.R. at 101a-105a; DOT's Response to Order Requesting Additional Information (Response), at Exhibit 2.);[2] (2) Resolution 90-43 passed by the Township on October 25, 1990, which adopted certain rights-of-way from various properties along SR 124 in the Township (explicitly including the OPA Property) to be used in the expansion of Mt. Rose Avenue (R.R. at 106a-107a; Response, at Exhibit 3.); (3) a deed of transfer dated May 14, 1991, and recorded on May 30, 1991, which conveyed 2.433 acres, including 3,299 square feet of the OPA Property, from the Township to DOT, to be used for a required right-of-way in fee simple along SR 124 (R.R. at 108a-113a; Response, at Exhibit 4.); (4) the plan accepting the dedication of the right-of-way for SR 124, which was recorded following the deed transfer (R.R. at 114a-116a; Response, at Exhibit 5.); (5) the 2005 deed of purchase, evidencing OPA's purchase of the property from Arthur Murphy to OPA and containing a metes and bounds description of the property that falls within the cartway of SR 124 (R.R. at 117a-121a; Response, at Exhibit 6.). (Appellant's brief, at 8-9.)

On August 17, 2016, the trial court conducted an evidentiary hearing to determine whether a *de facto* taking occurred. OPA presented the testimony of Pamela Seay, a title abstractor employed by OPA's legal counsel. (R.R. at 153a; Notes of Transcript (N.T.), 8/17/16, at 12.) Ms. Seay testified that, when performing a title search of the OPA Property, she did not locate the 1991 deed of dedication from the Township to DOT in the chain of title. (R.R. at 156a; N.T., 8/17/16, at 18.)

[2] Approximately 0.066 acres of the 0.142-acre area identified in the Plan fell within this 30-foot width right-of-way. The remaining portion of the right-of-way was comprised of the area of dedication from the Township. (Appellant's brief, at 9.)

4

The deeds searched by Ms. Seay, which dated back to 1935, all contained metes and bounds descriptions that included a portion of the roadbed of SR 124. (R.R. at 154a-156a; N.T., 8/17/16, at 16-18; *see also* R.R. at 201a-210a; N.T., 8/17/16, at OPA Exhibits 2-7.) OPA also presented the testimony of Arthur Murphy, the predecessor in title to OPA. (R.R. at 160a; N.T., 8/17/16, at 26.) Mr. Murphy testified that, during his ownership of the OPA Property, he did not receive notice that the Township had acquired a right-of-way. (R.R. at 161a; N.T., 8/17/16, at 28.)

DOT presented the testimony of Richard Reisinger, P.E., a professional engineer and the District 8-0 Right-of-Way Administrator. (R.R. at 165a-166a; N.T., 8/17/16, at 37-38.) Mr. Reisinger testified that he had personal knowledge of the chain of title and history of the property. (R.R. at 166a; N.T., 8/17/16, at 38.) He also explained how DOT calculated the 0.142-acre area, and that a portion of that area extends into the roadbed of SR 124. (R.R. at 174a; N.T., 8/17/16, at 54.) Mr. Reisinger further testified that the Plan included all of DOT's documents of title to its legal areas.

On December 12, 2016, the trial court issued its opinion and order overruling DOT's preliminary objections and finding a *de facto* taking. (R.R. at 132a-140a; Opinion and Order Overruling Preliminary Objections of DOT dated December 9, 2016.) In doing so, the trial court considered whether the Township properly obtained the 0.142-acre area that it dedicated to DOT, as well as the fact that the Property owner did not receive notice of DOT's acquisition of the right-of-way because the deed of dedication was allegedly not indexed to each property owner impacted by the dedication and there is no record of the Township taking that 0.142-acre area. DOT timely appealed the trial court's order to this Court.

5

**Discussion and Analysis**

On appeal, [3] DOT argues that (1) OPA waived its right to file a separate *de facto* taking action, collaterally challenging the nature and extent of its property interest condemned, where it did not file preliminary objections to the declaration of taking; (2) OPA lacks standing to bring a *de facto* claim because it was not the owner of the property allegedly taken at the time of taking; (3) the Board of Property has exclusive subject matter jurisdiction to determine the title of property to which the Commonwealth claims ownership; (4) the trial court's finding of a *de facto* taking based upon an alleged defect in the indexing of the deed of transfer to DOT was unsupported by substantial evidence; and (5) the trial court erred in its order overruling DOT's preliminary objections by failing to specify the property interest condemned and the date of condemnation as required by Section 502(c) of the Code.

**OPA's Failure to File Preliminary Objections**

Initially, DOT contends that OPA waived its right to file a separate *de facto* taking action, collaterally challenging the nature and extent of the property interest condemned, because it did not file preliminary objections to the Declaration.

OPA admits that it did not file preliminary objections to the Declaration. However, OPA argues that preliminary objections are not the exclusive method of challenging a taking of a portion of land not condemned in the Declaration, and that filing a *de facto* taking action is permitted in this case.

---

[3] Our review of the trial court's order overruling preliminary objections to a petition for appointment of a board of viewers is limited to determining whether the trial court abused its discretion or committed an error of law, or whether the findings of fact are supported by substantial evidence. *Elser v. Department of Transportation*, 651 A.2d 567, 570 n. 4 (Pa. Cmwlth. 1994).

Specifically, OPA asserts that its right to file a *de facto* taking action was not waived because DOT failed to include the 0.142-acre right-of-way in its Declaration.

"It is well established that the Code provides the exclusive method and practice governing eminent domain proceedings, including *de facto* takings." *Linde Enterprises, Inc. v. Lackawanna River Basin Sewer Authority*, 911 A.2d 658, 661 (Pa. Cwmlth. 2006).  Section 306(a) and (b) of the Code provide in pertinent part:

> (a)  Filing and exclusive method of challenging certain matters.–
>
> (1)  Within 30 days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking.
>
> * * *
>
> (2)  Preliminary objections shall be limited to and shall be the exclusive method of challenging:
>
> (i)  The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.
> (ii)  The sufficiency of the security.
> (iii) The declaration of taking.
>
> (b)  Waiver.–Failure to raise by preliminary objections the issues listed in subsection (a) shall constitute a waiver. Issues of compensation may not be raised by preliminary objections.

26 Pa.C.S. §306(a)-(b).

Accordingly, to challenge a declaration of taking, including a *de facto* taking, a condemnee must file a preliminary objection within 30 days of the filing of the declaration, and the failure to do so constitutes a waiver of the issue. *Nelis v.*

7

*Redevelopment Authority of Allegheny County*, 287 A.2d 880, 882 (Pa. Cwmlth. 1972).  In *Nelis*, the condemnor filed a declaration of taking, and a board of viewers awarded the condemnee compensation for his property.  The condemnee then appealed to the court of common pleas, alleging that the board of viewers' award failed to include compensation related to a portion of the property destroyed prior to the filing of the declaration of taking.  However, because the condemnee never filed preliminary objections to the condemnor's declaration of taking, as required by section 306(a) of the Code, we concluded that "[t]he issue of a *[d]e facto* taking having occurred prior to the filing of a declaration of taking . . . must be raised by preliminary objection to the declaration, and failure to do so constitutes a waiver to thereafter raise the issue."  287 A.2d at 882.  We explained:

> If upon the date of the filing of a declaration of taking the property owner is of the opinion that prior activities and actions of the condemnor constitute a [*d*]*e facto* taking, a condemnation as a matter of law has already occurred.  In such an event, the condemnor's attempted exercise of that power by the filing of a declaration of taking is in issue, an issue which in our opinion goes to the very heart of its power or right to condemn by formal condemnation proceedings.  It is precisely the type of issue which the legislature intended to be preliminarily determined by the court, with evidentiary support if necessary, before the matter proceeded to the amount of just compensation and the property interests entitled thereto.

*Nelis*, 287 A.2d at 883.

As explained above, in this case, OPA did not file preliminary objections to DOT's Declaration.  DOT argues that OPA's failure to file any preliminary objections prevents it from attacking the taking through the filing of this second petition for the appointment of a board of viewers.  OPA counters that it is

8

not precluded from asserting a *de facto* taking because the at-issue 0.142-acre area was not condemned in the Declaration.

While our holding in *Nelis* suggests that the failure to file preliminary objections to a declaration is fatal to a condemnee's ability to later attack a taking, we must consider whether the same holds true if the declaration does not properly identify a portion of the subject property. *See Gitlin v. Pennsylvania Turnpike Commission*, 121 A.2d 79, 83 (Pa. 1956) (finding that a condemnation cannot "embrace more property than as described in the [declaration] and identified by the attached plan").

We recently addressed a similar issue in *Szabo v. Department of Transportation*, 159 A.3d 604 (Pa. Cmwlth. 2017). In *Szabo*, DOT filed a declaration seeking to take certain property to be used in the expansion of SR 19 in McMurray, Pennsylvania. *Id.* at 605. DOT's declaration was accompanied with plans that illustrated the proposed condemnation. *Id.* The Szabos filed a petition to appoint a board of viewers to determine the amount of just compensation from the taking. *Id.* at 605-06. During preparation for the hearing, a surveyor engaged by the Szabos discovered that the plans "misidentified property owned by the Szabos as owned by other entities." *Id.* at 606. Because of the misidentification, the declaration and plan understated the amount of property owned by the Szabos and subject to the condemnation. *Id.* The Szabos notified DOT of the inaccuracies, but the parties were unable to reach a settlement of the matter. Therefore, the Szabos filed a petition for evidentiary hearing "to determine the nature and extent of the property interests condemned and identify the owners thereof." *Id.*

The trial court denied the petition for evidentiary hearing, and the Szabos appealed that decision to this Court. *Id.* On appeal, we addressed whether

9

(1) DOT's declaration "depriv[ed] the Szabos of adequate notice of the extent or effect of the taking; and (2) whether the Szabos' failure to file preliminary objections constituted a waiver of their right to raise the inadequacy of the plan attached to the declaration." *Id.* DOT argued that the plans correctly depicted the area subject to the taking and, accordingly, the Szabos had notice of the scope of the taking. *Id.*

This Court determined that the "plan[] incorrectly identified [the] property owned by the Szabos as owned by other parties," and, therefore, DOT "failed to accurately identify the property" in the declaration. *Id.* at 606-07. Thus, DOT "did not provide adequate notice of the extent and effect of the taking" to the Szabos. *Id.* at 607. We explained:

> The burden of accurately identifying the property taken through the exercise of eminent domain should not fall on the condemnees. Section 302 of the Code requires the condemnor, and not the property owner, to properly identify those affected by the taking.

*Id.* at 608. Because the declaration did not accurately identify the owners of the property and, therefore, "did not adequately establish the extent or effect of the taking," we ultimately held that the Szabos did not waive their right to raise this issue.

Here, the plan filed with DOT's Declaration identified the 0.142-acre area as an existing right-of-way that was allegedly conveyed to DOT by deed in May 1991. In the course of its preparation for the first hearing before the board of viewers, OPA determined that the 0.142-acre area was *not* an existing right-of-way. The trial court agreed with that determination, finding that DOT's Declaration failed to properly identify the 0.142-acre area. The trial court concluded that the misidentification resulted in DOT's taking of more property than what was condemned in the Declaration. As we explained in *Szabo*, a landowner's failure to

10

file preliminary objections to a declaration of taking does not preclude the landowner from subsequently alleging a *de facto* taking of a portion of property that was not condemned through a declaration. *Szabo*, 159 A.3d at 608; *see also In re Condemnation by the Department of General Services*, 714 A.2d 1159, 1162 (Pa. Cmwlth. 1998) (finding that the owner did not waive a *de facto* taking claim by failing to file preliminary objections where the declaration "did not adequately establish the extent or effect of the taking"); *Department of Transportation v. Greenfield Township Property Owners*, 582 A.2d 41, 43-44 (Pa. Cmwlth. 1990) (rejecting the proposition that the filing of a declaration precludes a petition for a *de facto* taking because a landowner could not know of additional damage to the property within the time period for filing preliminary objections).

Therefore, based upon our holding in *Szabo*, we find that OPA did not waive its right to raise the issue of a *de facto* taking, despite its failure to file preliminary objections to the Declaration. Thus, we affirm the trial court's order in this regard.

**OPA's Standing to Bring a *De Facto Claim***

Next, DOT contends that OPA lacks standing to bring a *de facto* claim because OPA did not own the subject property at the time of the taking. The trial court disagreed, determining that DOT neither proved that a prior right-of-way existed, nor that the right-of-way was conveyed to DOT:

> There is no evidence that . . . Township had acquired a right of way or was the fee simple owner of property that it conveyed to [DOT] by the May 1991 deed. If . . . Township did not have a right of way or was not the fee simple owner, that deed did not convey anything. The deed was not indexed against any of the property owners

11

named in the addendum to that deed. There is no evidence that any of those property owners, including [OPA], had notice of . . . Township's claim to have acquired any interest in their property. [DOT] did not do its due diligence to determine whether or not . . . Township had properly acquired the right of way over the land it purportedly was conveying to [DOT].

(Trial Ct. Op., 12/12/16, at 6.)

We find that the record contains substantial evidence to support the trial court's conclusion that a significant question as to ownership of the 0.142-acre area exists. In support of its finding, the trial court cited evidence of record including Resolution 90-43 and the 1991 deed and the addendum attached thereto. The evidence of record supports the trial court's determination that DOT failed to prove that a previous right-of-way existed over the 0.142-acre area. The Township, in taking that area, did not institute eminent domain proceedings, failed to notify the owner, and failed to index the taking such that it would be found by a subsequent purchaser of the Property. However, because of the uncertainty of ownership, the trial court acted prematurely in considering OPA's *de facto* taking claim. Furthermore, until the ownership issue is resolved, it would also be premature for this Court to consider whether OPA had standing to bring its *de facto* taking claim.

## Subject Matter Jurisdiction

DOT next asserts that the trial court did not have subject matter jurisdiction to determine the title of property to which the Commonwealth claims ownership, as the exclusive jurisdiction to do so lies with the Board of Property. We agree.

As we explained in *McCullough v. Department of Transportation*, 541 A.2d 430 (Pa. Cmwlth. 1988):

12

Section 1207 of the Administrative Code[4] . . . provides that the Board of Property shall have jurisdiction "to hear and determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth." This Court has consistently held that that language vests in the Board of Property exclusive jurisdiction to determine the title to real estate or to remove a cloud on title to such real estate where private property owners and the Commonwealth claim an interest in the same real estate.

541 A.2d at 431 (citations omitted); *see also Krulac v. Pennsylvania Game Commission*, 702 A.2d 621, 623 (Pa. Cmwlth. 1997) ("[T]his Court has consistently held that the third paragraph of Section 1207 vests in the Board of Property *exclusive* original jurisdiction over *any* claims involving title to land occupied or claimed by the *Commonwealth . . . .*").

In this case, the trial court determined that an inverse condemnation occurred in 2011 and that DOT took 0.142 acres of land that was not included in the Declaration.[5] Although it is true that the 0.142-acre area was not accurately

_____

[4] 71 P.S. §337.

[5] After finding that the 0.142-acre area was not properly conveyed to DOT in 1991, the trial court went on to conclude that OPA met its burden of establishing that a *de facto* taking occurred, and that DOT must compensate OPA for the excess property taken in 2011:

The evidence establishes that [DOT] took more property than it had condemned in the action docketed to York County number 2011-SU-002439-05. Since the *de facto* taking occurred in 2011, this action is well within the statute of limitations. Therefore, [DOT] must pay for the land it had taken.

It is clear that an inverse condemnation occurred in 2011 during the construction and that [DOT] took 0.142 acres that was not included

13

identified in the Declaration, proper ownership of that property must be resolved before any other issues related to DOT's taking of the property can be considered. Because the dispute involves a cloud on the title to property in which both a private owner (OPA) and the Commonwealth (DOT) claim an interest, section 1207 of the Administrative Code mandates that the Board of Property must determine title to the 0.142-acre area before the trial court can properly determine whether a *de facto* taking or inverse condemnation occurred and whether OPA is entitled to compensation.

Thus, we reverse the trial court's order to the extent it determined that an inverse condemnation occurred in 2011 and that, because DOT took 0.142 acres of property that was not included in the Declaration, it was appropriate to appoint a board of viewers to determine the amount of damages due to OPA.[6] The matter shall be remanded to the trial court, with the direction to transfer this matter to the Board of Property to determine proper title to the 0.142-acre area.

## Conclusion

Because the 0.142-acre area was not properly identified and included in DOT's Declaration, the trial court did not err in finding that OPA did not waive

---

in the [D]eclaration. . . . Therefore, it is appropriate to appoint a Board of View to determine the amount [of] damages due to [OPA] for that taking.

(Trial Ct. Op., 12/12/16, at 8.)

[6] Because we find that a dispute as to the ownership of the 0.142-acre area exists and reverse the trial court's finding of inverse condemnation, it is not necessary for us to address DOT's remaining arguments regarding the defect in indexing of the deed of transfer to DOT and the trial court's alleged failure to specify the property interest condemned and the date of condemnation.

14

its right to raise the issue of a *de facto* taking, despite its failure to file preliminary objections to the Declaration. Since the Board of Property has the exclusive jurisdiction to determine title to property in which the Commonwealth holds an interest, the trial court erred in determining that an inverse condemnation occurred in 2011 and that a board of viewers be appointed. Accordingly, the trial court's order is affirmed in part, and reversed and remanded in part, consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

York OPA, LLC                :

                       :

          v.               :   No. 12 C.D. 2017

                       :

Commonwealth of Pennsylvania,   :

Department of Transportation,    :

          Appellant      :

## _ORDER_

AND NOW, this 20th day of March, 2018, the December 12, 2016 order of the Court of Common Pleas of York County (trial court) in the above-captioned matter is affirmed to the extent that it found that the 0.142-acre area was not properly identified and included in the Department of Transportation's declaration of taking, and reversed to the extent that it found an inverse condemnation in 2011 and that a board of viewers should be appointed to determine the damages owed to York OPA, LLC. The matter is remanded to the trial court, with specific instruction to transfer to the Board of Property, for further findings consistent with this opinion.

Jurisdiction relinquished.

_____

PATRICIA A. McCULLOUGH, Judge